JASON R. KLINOWSKI
Email: jklinowski@wallacejordan.com
WALLACE, JORDAN, RATLIFF, & BRANDT, LLC
800 Shades Creek Parkway, Suite 400
Birmingham. Alabama 35209
Telephone:  (205) 870-0555
Facsimile: (205) 874-3278

JOHN K. LY (SBN 247477)
Email: jly@lianglyllp.com
JASON L. LIANG (SBN 251235)
Email: jliang@lianglyllp.com
LIANG LY LLP
601 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 262-8000
Facsimile: (213) 335-7776

*Attorneys for Tomato Specialties, LLC d/b/a the Avocado Company International*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRODUCE PAY, INC.; TOMATO SPECIALTIES, LLC D/B/A THE AVOCADO COMPANY INTERNATIONAL,<br><br>Plaintiffs,<br><br>vs.<br><br>PROMATE PRODUCE U.S.A., INC.; and SERGIO GARCIA,<br><br>Defendants. | CASE NO. 16-cv-08047-R(PLAx)<br><br>Assigned to: Hon. Manuel L. Real<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 9 RE: TOMATO SUSPENSION AGREEMENT**<br><br>Date:  Dec. 18, 2017<br>Time: 10:00 a.m.<br>Ctrm:  880<br><br>Trial Date: December 19, 2017 at 10:00 a.m. |

*PRINTED ON RECYCLED PAPER*

LIANG LY LLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000  FACSIMILE 213-335-7776

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 18, 2017 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 880 before the Hon. Manuel L. Real of the above entitled Court, located at 255 East Temple Street, Los Angeles, CA 90012, Plaintiff Tomato Specialties, Inc. *("Tomato Specialties")* will, and hereby does, move this Court, in limine, to prohibit the parties, their witnesses and all counsel from introducing any evidence that Tomato Specialties violated the Tomato Suspension Agreement by charging improperly low prices for its tomatoes, including any and all related documents.

This Motion is made on the ground that this evidence is irrelevant, is impermissible character evidence, and is solely introduced to prejudice the Plaintiff, create confusion, and waste the Court's time. Further, Defendants' evidence relies on an improper reading of the Agreement.

The parties have satisfied their obligation to meet and confer under Local Rule 7-3.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, as well as the pleadings, files, and records in this proceeding, any matters of which the Court may take judicial notice, and any

//
//
//
//
//
//
//

*PRINTED ON RECYCLED PAPER*

LIANG LY LLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000 FACSIMILE 213-335-7776

1  argument or evidence that may be presented to or considered by the Court prior to

2  its ruling.

3

4  Respectfully submitted,

5   DATED:  November 21, 2017

6

7

8                                    WALLACE, JORDAN, RATLIFF,

9                                         & BRANDT, LLC

10                                 By: /s/ Jason R. Klinowski

11                                     Jason R. Klinowski

12                                   (Admitted Pro Hac Vice)

13                         Attorneys for Plaintiff Tomato Specialties, LLC

14

15                                    LIANG LY LLP

16                                  By: /s/ John K. Ly

17                                      John K. Ly

18                                     Jason L. Liang

19                        Local Counsel for Plaintiff Tomato Specialties, LLC

20

21

22

23

24

25

26                                        *PRINTED ON RECYCLED PAPER*

27            PLAINTIFF'S MOTION IN LIMINE No. 9
              RE: TOMATO SUSPENSION AGREEMENT

28

LIANG LY LLLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000  FACSIMILE 213-335-7776

**PLAINTIFF'S MOTION IN LIMINE NO. 9 RE:**

**TOMATO SUSPENSION AGREEMENT**

Plaintiff Tomato Specialties, LLC d/b/a The Avocado Company International ("*Tomato Specialties*") hereby moves this Honorable Court in limine to prohibit the parties, their witnesses and all counsel from introducing any evidence that Tomato Specialties violated the Tomato Suspension Agreement by charging improperly low prices for its tomatoes, including any and all related documents. The relevant facts are as follows:

1. On March 4, 2013, the U.S. Department of Commerce entered into the Tomato Suspension Agreement of 2013 ("*the Agreement*") with Mexican tomato growers and exporters ("*signatories*") continuing the suspension of the antidumping investigation of imports of fresh tomatoes from Mexico that had originally been initiated in 1996.

2. The Agreement covers "all fresh or chilled tomatoes" that originate in Mexico.

3. Among other provisions, the Agreement prohibits the sale of Mexican Tomatoes in the United States for less than the reference price, which is further specified in the Agreement.

4. Tomato Specialties bought all its tomatoes from sellers unaffiliated to Mexican tomato growers.

Plaintiff contends that this evidence is inadmissible because it is irrelevant, is impermissible character evidence, and is solely introduced to prejudice the Plaintiff, create confusion, and waste the Court's time. Further, Defendants' evidence relies on an improper reading of the Agreement.

Defendants' evidence is irrelevant because Defendants do not claim that Plaintiff violated the Agreement in sales to Defendants. Instead, they claim that

LIANG LY LLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000   FACSIMILE 213-335-7776

-1-

*PRINTED ON RECYCLED PAPER*

Plaintiff violated the Agreement in their sales to other, unrelated third parties.[1] Evidence about a transaction between Tomato Specialties and a third-party customer who is not a party and is not otherwise involved in this action is not relevant to a determination of the central issue in this case—whether Promate properly paid Tomato Specialties for the Produce it purchased. Evidence regarding transactions between Plaintiff and a third-party does not tend to make Defendants' failure to pay Plaintiff's Produce-related invoices more or less probable. Further, these transactions have nothing to do with any of the disputes in this case: whether an order was placed, the Produce was delivered, Promate accepted the produce, the quality of Produce was good, the invoices are accurate in their terms, or Promate paid for the Produce. Therefore, this evidence would not have "any tendency to make [a fact of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401; *See U.S. v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001) ("The particular facts of the case determine the relevancy of a piece of evidence.").

Instead, it appears that Defendants seek to introduce this evidence in an attempt to portray Isaac Castro, as a decision-maker for Tomato Specialties and as the salesman for all the unpaid invoices at issue in this case, as a person of bad character who is likely to behave in conformity with that character. Isaac Castro was personally involved in all the transactions that allegedly violate the Agreement. Further, Tomato Specialties, for all intents and purposes, operates by and through Isaac Castro. Therefore, evidence that tends to portray Tomato Specialties as a bad actor would have the effect of depicting Isaac negatively.

---

[1] Defendants have not presented any evidence in discovery or in their disclosures that would tend to show that Tomato Specialties violated the Agreement in its sales to Promate. Further, they have not made any allegations to that effect in their Answer, Counterclaim, or affirmative defenses. Therefore, they are now barred from making such an argument or presenting any evidence to that effect.

LIANG LY LLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000 · FACSIMILE 213-335-7776

However, character evidence is inadmissible for such a purpose. Fed. R. Evid. 404; *See Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981). Thus, because Promate cannot show any other purpose for introducing this evidence, it should be barred from presenting this evidence at trial.

Even if this evidence was not character evidence, Defendants should be barred from introducing it because their theory relies on an incorrect reading of the Agreement. The plain language of the Agreement makes it clear that Plaintiff's alleged sales at lower than the reference price do not violate the Agreement because Plaintiff was not the first seller of Mexican tomatoes in the United States. The language of the Agreement repeatedly states that it was passed to regulate sales by signatories. *See* Agreement at I. ("the Department has outlined the procedure that *signatories* must follow for selling subject merchandise for processing") (emphasis added); Agreement at IV(C)(3) ("*Signatories* agree not to circumvent the Agreement . . . . For example, each signatory will take the following actions:")(emphasis added); Agreement at IV(C)(3)(a) ("It is the responsibility of each *signatory* to ensure that sales of its merchandise are made consistent with the requirements of this Agreement.") (emphasis added). In fact, under the heading "Basis for the Agreement," the Agreement states that "each *signatory* individually agrees that, in order to prevent price suppression or undercutting, it will not sell in the United States, on and after the effective date of the Agreement, merchandise subject to the Agreement at prices that are less than the reference price . . . ." Agreement at III (emphasis added). The "Compliance Monitoring" section outlines various requirements for signatories, and once again, does not apply these requirements to any other parties. Agreement at IV(B). The Agreement never mentions duties or procedures that must be followed by non-signatories. It is clearly designed to apply to relationships between Mexican growers or exporters and their first non-affiliated purchasers in the United States.

LIANG LY LLLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000 · FACSIMILE 213-335-7776

LIANG LY LLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000 FACSIMILE 213-335-7776

In fact, the Agreement specifically requires that signatories "enter into a contract with the party that is responsible for the first sale of its subject merchandise to an unaffiliated customer in the United States (the Selling Agent) that incorporates the term of this Agreement." Agreement at (IV)(C)(3). There is no such requirement for other subsequent buyers or sellers of the tomatoes.

Further, the Agreement also never states that its provisions follow the tomatoes beyond the first sale to a non-affiliated purchaser in the United States. *Compare* PACA, 7 U.S.C. §499e (c) (Perishable agricultural commodities . . . and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers . . ."). Any such interpretation would be reading words into the Agreement that are not there, and are clearly not intended to be there. The plain language of the text should control, and the inquiry should end there. *See Bedroc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." (internal quotations omitted)); *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least when the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotations omitted)). As demonstrated by its passage of PACA, Congress clearly knows how to pass statutes that govern the sale of Produce and remain with the Produce as it is resold. Further, the USDA has promulgated copious regulations to administer and enforce PACA, demonstrating that it too can regulate sales of Produce in the United States.

If the Agreement had been meant to regulate domestic Produce sales, it would have been passed as a statute or as a regulation. Instead, it is simply a

-4-

contract between the Department of Commerce and the signatory Mexican growers and exporters. Therefore, as a contract, it can only apply to the signatory parties, and cannot bind third parties that did not agree to be bound by it. *See King v. S. Pac. Co.*, 41 P. 786, 787 (Cal. 1895); *Daniels v. Sunrise Senior Living, Inc*., 151 Cal. Rptr. 3d 273, 27 (Cal. Ct. App. 2013). Third parties such as Promate have not agreed to be bound by the Agreement, and therefore, there is no legal authority under which they can be held to be bound by its provisions.

Further, the Agreement is, in practice, designed to ensure that Mexican tomatoes do not flood the American market and cause the price of tomatoes to fall dramatically. The Agreement ensures that this will not happen by regulating the price of tomatoes when they are first imported from Mexico. If, after that first sale, a dealer of Produce sells the tomatoes below the reference price and incurs a loss, that does not affect the purpose or the reach of the Agreement. In fact, the sale at a loss by a Produce dealer does not reflect the price of tomatoes when purchased from the grower, and does not have any repercussions on the price paid to these growers.

The nature of contracts between growers and sellers of Produce is such that sellers can often afford to suffer a loss on a few loads of Produce. Contracts between sellers and growers are generally long-term and deal in high volumes of Produce. Therefore, the quality of the tomatoes a seller receives from grower may vary greatly from load to load. A seller, however, will likely accept all loads from the grower because of the high volume of business that their contract entails. Therefore, the seller may sometimes have to sell a load at a discounted price because of deficiencies in quality. There may also be other business reasons to take a loss on a load of Produce. The seller may be trying to maintain a relationship with one of its clients, or it may simply need to sell some surplus product. The large volume of Produce that sellers receive and move allows them to suffer losses

LIANG LY LLLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000 · FACSIMILE 213-335-7776

LIANG LY LLP
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000. FACSIMILE 213-335-7776

1  on individual loads without compromising their bottom line. Thus, a practical

2  interpretation of the Agreement would not read in a requirement of continued sales

3  at the reference price beyond the first sale in the United States.

4  It is clear that the Agreement only mandates that the first sale of Mexican

5  tomatoes to an unaffiliated customer in the United States be conducted above the

6  reference price. It does not regulate further sales after the initial transaction.

7  Therefore, even if Tomato Specialties sold Mexican tomatoes at a price lower than

8  the reference price, it did not violate the Agreement. Evidence to the contrary can

9  only create prejudice, waste time, and distract from the relevant issues in this case.

10  It should be excluded from trial.  Further, nothing in Defendants' affirmative

11  defenses or counterclaims raised this issue. Instead, Defendants waited until late

12  in the action to raise the theory. As a result, Plaintiffs were unable to test this theory

13  in discovery. Thus, Defendants should be barred from introducing any evidence as

14  to this issue at trial.

15  FOR THESE REASONS, Tomato Specialties hereby respectfully requests

16  this Honorable Court to enter an Order precluding Defendants from (a) presenting

17  any testimonial or documentary evidence related to any alleged violations of the

18  Tomato Suspension Agreement by Tomato Specialties and (b) granting such other

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27

28

*PRINTED ON RECYCLED PAPER*

PLAINTIFF'S MOTION IN LIMINE No. 9
RE: TOMATO SUSPENSION AGREEMENT

1  and further relief as this Honorable Court deems appropriate upon consideration

2  of this matter.

3

4  Respectfully submitted,

5    DATED:  November 21, 2017

6

7                                              WALLACE, JORDAN, RATLIFF,

8                                              & BRANDT, LLC

9                                              By: /s/ Jason R. Klinowski

10                                             Jason R. Klinowski

11                                             (Admitted Pro Hac Vice)

12                                             Attorneys for Plaintiff Tomato Specialties, LLC

13

14

15                                             LIANG LY LLP

16                                             By: /s/ John K. Ly

17                                             John K. Ly

18                                             Jason L. Liang

19                                             Local Counsel for Plaintiff Tomato Specialties, LLC

20

21

22

23

24

25

26

27

28

PRINTED ON RECYCLED PAPER

PLAINTIFF'S MOTION IN LIMINE No. 9
RE: TOMATO SUSPENSION AGREEMENT

**LIANG LY LLP**
601 SOUTH FIGUEROA STREET SUITE 1950
LOS ANGELES, CA 90017
TELEPHONE 213-262-8000. FACSIMILE 213-335-7776